1

2

3

4

5

6

7

8                                    IN THE UNITED STATES DISTRICT COURT

9                                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    HEALTHSOUTH CORPORATION, et al.,              No. C 06-01911 CRB

12                    Plaintiffs,                    **MEMORANDUM AND ORDER**

13          v.

14    MID-PENINSULA ENDOSCOPY
      ASSOCIATES, INC., et al.,

15

16                    Defendants
      _____/

17

18          Plaintiffs filed this state law breach of contract action in federal court.  Now pending

19    before the Court is defendants' motion to dismiss (1) for lack of diversity jurisdiction, and

20    (2) for failure to state a claim.  After carefully considering the papers filed by the parties, the

21    Court concludes that oral argument is unnecessary, see Local Rule 7-1(b), and GRANTS

22    defendants' motion to dismiss.

23                                    **ALLEGATIONS OF THE COMPLAINT**

24          This dispute involves the operation of the San Mateo Endoscopy Center ("the

25    Center"), a state licensed ambulatory outpatient surgical center providing endoscopy

26    services.  Complaint ¶ 11.  The Center is operated pursuant to a Limited Partnership

27    Agreement.  Defendant Mid-Peninsula Endoscopy Center ("MPEC") is the General Partner

28    and defendant Mid-Peninsula Endoscopy Associates, Inc. and plaintiff Endoscopy Center

      Affiliates, Inc. ("ECA") are the only two limited partners.  Id. ¶ 12-13.

*United States District Court*

*For the Northern District of California*

**United States District Court**

**For the Northern District of California**

1    The Limited Partnership Agreement and a General Partnership Agreement that

2  governs MPEC require plaintiff ECA "to provide certain enumerated services to the Center

3  in its role as Manager." Id. ¶ 17.  Since 1994, ECA and its corporate affiliate, plaintiff

4  Healthsouth, "have been providing services to and incurring expenses on behalf of the Center

5  in accordance with ECA's role as manager of the Center." Id. ¶ 18.  For July and August

6  2005, defendants only made partial payments on the invoices for ECA's services, and

7  defendants have made no payments for those services for September 2005 through December

8  2005. Id. ¶ 21.  As of the filing of the complaint, defendants owe $900,000 for payment of

9  ECA's manager services. Id. ¶ 22.

10    The Center purported to terminate ECA's role as manager of the Center as of

11  December 12, 2005.  Id. ¶ 26.

12    ECA and Healthsouth responded by filing this state-law diversity jurisdiction lawsuit

13  in federal court.  They make claims for breach of contract, breach of the implied covenant of

14  good faith and fair dealing, quantum meruit, money had and received, money paid,

15  promissory estoppel arising from defendants failure to pay ECA for the services it rendered

16  to the Center as manager.  They also allege that defendants failed to get adequate insurance

17  for the Center, and that they failed to make partnership distributions to ECA.

18                                    **DISCUSSION**

19    Defendants now move to dismiss the complaint on the ground that the parties are not

20  completely diverse and therefore the Court lacks subject matter jurisdiction.  In the

21  alternative, they move to dismiss certain claims for failure to state a claim.

22  **I.    Subject Matter Jurisdiction**

23      **A.    Legal standard**

24    Although defendants are moving to dismiss the complaint, *plaintiffs* bear the burden

25  of proving that this Court has jurisdiction to decide this action.  See Kokkonen v. Guardian

26  Life Ins. Co. of America, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited

27  jurisdiction. . . .  It is to be presumed that a cause lies outside this limited jurisdiction, and the

28  burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations

1  omitted).  "A plaintiff suing in a federal court must show in his pleading, affirmatively and

2  distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do

3  so, the court, on having the defect called to its attention or on discovering the same, must

4  dismiss the case, unless the defect be corrected by amendment."  Tosco Corp. v.

5  Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001) (quoting Smith v.

6  McCullough, 270 U.S. 456, 459 (1926)).

7        Moreover, "[f]or motions to dismiss under Rule 12(b)(1), unlike a motion under Rule

8  12(b)(6), the moving party may submit affidavits or any other evidence properly before the

9  court. . . .  It then becomes necessary for the party opposing the motion to present affidavits

10  or any other evidence necessary to satisfy its burden of establishing that the court, in fact,

11  possesses subject matter jurisdiction."  Association of American Medical Colleges v. U.S.,

12  217 F.3d 770, 778 (9th Cir. 2000).

**B.    Analysis**

13        Defendants contend the Court lacks diversity jurisdiction because plaintiff ECA is a

14  citizen of California, as are all the defendants.  A federal court lacks diversity jurisdiction if

15  any defendant is a citizen of the same state as any plaintiff.  See Tosco Corp., 236 F.3d at

16  499.  A corporation is deemed a citizen of any state in which it has been incorporated and of

17  the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1);  id.

18

19        Federal courts generally use one of two tests to determine a corporation's
         principal place of business.  First, the place of operations test" locates a
20        corporation's principal place of business in the state which "contains a
         substantial predominance of corporate operations." . . .  Second, the "nerve
21        center test" locates a corporation's principal place of business in the state
         where the majority of its executive and administrative functions are performed.
22        . . . [W]here a majority of a corporation's business activity takes place in one
         state, that state is the corporation's principal place of business, even if the
23        corporate headquarters are located in a different state.  *The "nerve center" test
         should be used only when no state contains a substantial predominance of the*
24        *corporation's business activities.*  Thus, the Ninth Circuit applies the place of
         operations test unless the plaintiff shows that its activities do not substantially
25        predominate in any one state.

26  Tosco, 236 F.3d at 500.  Courts look to a number of factors "to determine if a given state

27  contains a substantial predominance of corporate activity, including the location of

28

3

United States District Court

For the Northern District of California

1   employees, tangible property, production activities, sources of income, and where sales take

2   place." Id.

3        Defendants contend that ECA was a California corporation at the time it entered into

4   the partnership agreement, upon which now it bases its lawsuit, and, in any event, ECA's

5   only business is the operation of the Center in California.

6        Plaintiffs respond by offering evidence that ECA has been merged into several other

7   corporations (most of which were also California corporations), and the entity that emerged

8   is registered as a Delaware corporation.  They also argue that the nerve center, rather than

9   place of operations, test applies because ECA does not conduct any business at all; instead,

10  they characterize it as a "passive investment vehicle" whose "sole function is to act as an

11  owner of investments in partnerships that operate endoscopy centers."  Declaration of Shawn

12  Patzkowsky (Patzkowsky Decl.) ¶ 8.  Since "virtually all" of ECA's corporate activity occurs

13  in Alabama, under the nerve center test Alabama, rather than California, is ECA's principal

14  place of business.

15       Plaintiffs have not met their burden of proving that ECA is not a citizen of California.

16  Plaintiffs argument ignores the nature of this lawsuit, the allegations of their complaint, and

17  the partnership agreements: this lawsuit arises from ECA's business activities in California.

18  ECA seeks to recover over $900,000 it claims it is entitled to as reimbursement for *business*

19  *services it provided to the Center in California* as manager of the Center.  Complaint ¶¶ 17-

20  22.  If ECA were merely a "passive investment vehicle" it could not bring a lawsuit for

21  reimbursement of expenses it incurred operating a California endoscopy center.

22       ECA has offered evidence that more than 60 percent of its revenue is derived from

23  California.  ECA does not distinguish between revenue from managing endoscopy centers

24  and revenue as an investor; as the burden is on plaintiffs to prove jurisdiction, the Court will

25  assume that the revenue is derived primarily from operating the Center.  Plaintiffs do not

26  offer any evidence to the contrary.

27       ECA's reliance on Vareka Investments, N.V. v. American Investment Properties, Inc.,

28  724 F.2d 907 (11th Cir. 1984) as an "analogous situation," Opposition at 7, is misplaced.  In

4

**United States District Court**

For the Northern District of California

1  <u>Vareka</u>, the plaintiff "passive investment vehicle" merely invested in real estate in Florida.

2  The trial court specifically found that the plaintiff was not involved in the day-to-day

3  operation of the real estate at issue, and did not "take any other action which might be

4  construed as operating or managing the property."  Here, in contrast, ECA alleges that it

5  operated and managed the Center; indeed, its lawsuit is premised on its assertion that

6  defendants have failed to pay ECA for its operation and management of the Center.  The

7  partnership agreements upon which ECA bases its lawsuit require ECA to operate the Center.

8  As such business activity appears to be the only activity in which ECA engages, or at least it

9  is the only activity of which there is evidence in the record, a substantial predominance of

10  ECA's business activities occur in California and therefore ECA is a California citizen for

11  purposes of diversity jurisdiction.

12  <center>**CONCLUSION**</center>

13       As plaintiffs have not met their burden of proving that there is complete diversity,

14  defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED.

15       **IT IS SO ORDERED.**

16

17  Dated: June 2, 2006                              _____
                                                       CHARLES  R. BREYER
18                                                     UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28